# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT TARNOFF, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SGT. THOMAS BOYD, ) <br> ) <br> Defendant. ) <br> ) | No. 08 C 1184 <br><br> Magistrate Judge Maria Valdez |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Tarnoff brought this complaint against Defendant Sgt. Thomas Boyd alleging one count of false arrest in violation of 42 U.S.C. §§ 1983 and 1988. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The matter is now before the Court on Defendant's Motion for Summary Judgment [Doc. No. 39]. For the reasons that follow, the Court holds that Defendant is shielded from liability based on qualified immunity, and Defendant's motion is therefore granted.

## FACTS

The following facts are undisputed or are deemed admitted due to a party's failure to comply with Local Rule 56.1, which this Court strictly enforces. The plaintiff, Robert Tarnoff, was a hearing officer for the Cook County Child Support Division on November 1, 2006, and worked at 32 W. Randolph, in Chicago, Illinois. (Def.'s LR 56.1(a)(3) ¶ 2.) The defendant, Sgt. Thomas Boyd, was a Cook County Deputy Sheriff on November 1, 2006, assigned to the Daley Center Courts. (*Id.* ¶ 3.) On November 1, 2006, at approximately 1:40 p.m., Plaintiff, who

suffers from Crohn's disease, had a sudden stomach problem and went into a bathroom at 32 W. Randolph. (*Id.* ¶¶ 4-5.) While inside the bathroom, Plaintiff experienced an "explosion" of fecal matter all over himself, the floor, and the walls. (*Id.* ¶ 6.) After the incident, Plaintiff attempted to clean the affected areas, which took a long time, and he also took off his pants to clean them in the sink. (Pl.'s LR 56.1(b)(3)(B) ¶¶ 1-2.)

At approximately 4:00 p.m. the same day, Defendant received a call from his supervisor informing him that Plaintiff had been in a bathroom at 32 W. Randolph since 1:30 p.m. Defendant went to the bathroom area with Deputy Morrissey, Deputy Hubbard, and the building engineer. (Def.'s LR 56.1(a)(3) ¶¶ 7-8.) At approximately 4:05 p.m., Defendant knocked on the bathroom door, identified himself to Plaintiff, and asked Plaintiff several times if he needed any medical assistance. (*Id.* ¶¶ 9-10.) According to Defendant, Plaintiff's voice sounded slurred and trembling. (*Id.* ¶ 11.) Plaintiff repeatedly told Defendant not to come into the bathroom and would not open the door. Defendant told Plaintiff that he was going to have to open the door if Plaintiff did not come out. (*Id.* ¶ 12.) Plaintiff was too embarrassed to come out of the bathroom when directed to do so, because he remained naked below the waist. (Pl.'s LR 56.1(b)(3)(B) ¶ 3.) Defendant ultimately had the building engineer open the door. (Def.'s LR 56.1(a)(3) ¶ 13.) When the door was finally opened, Defendant saw that, in his opinion, Plaintiff was sweating profusely, had an ashen face, was trembling, and appeared to be in a severe amount of pain and suffering. (*Id.* ¶ 14.) Plaintiff maintains that at the time Defendant first encountered him in the bathroom, he was healthy. (Pl.'s LR 56.1(b)(3)(B) ¶ 5.)

Defendant told Plaintiff he had opened the door to make sure Plaintiff was not lying on the ground. (*Id.* ¶ 15.) Plaintiff asked Defendant why did not just shut the door and leave him

alone after he checked. (*Id.* ¶ 16.) Defendant again offered to call an ambulance for Plaintiff, but Plaintiff refused. (Def.'s LR 56.1(a)(3) ¶ 15.) Defendant told Plaintiff that he could not stay there alone and that he had to put his pants back on and leave the bathroom. (*Id.* ¶ 16.) Plaintiff, however, did not want to leave the bathroom or the building, because he did not want any co-workers or litigants to see him. (*Id.* ¶¶ 17-18.) Defendant told Plaintiff that he could stay in the back of the floor until everyone left. (*Id.* ¶ 19; Pl.'s LR 56.1(b)(3)(B) ¶ 12.) Plaintiff left the bathroom wearing wet and soiled clothes. (Pl.'s LR 56.1(b)(3)(B) ¶ 8.) Two other individuals were outside of the bathroom when Plaintiff exited, and the door remained wide open. (*Id.* ¶¶ 9-10.) While Defendant disputes Plaintiff's recollection, Plaintiff states that he was left standing in a public hallway with wet and soiled pants, in the presence of several individuals, including a female deputy. (*Id.* ¶ 13-14.)

Defendant then went to the front of the floor with Deputy Morrissey; Defendant had Deputy Hubbard stay in the back with Plaintiff because he was concerned about Plaintiff's health. (Def.'s LR 56.1(a)(3) ¶¶ 20, 27.) Defendant did not know if there was a chance that Plaintiff might pass out or become incapacitated in any way. (*Id.* ¶ 29.) Defendant ordered Deputy Hubbard to stay with Plaintiff and not to let Plaintiff into the bathroom unless absolutely necessary until 4:30 p.m. (Pl.'s LR 56.1(b)(3)(B) ¶ 18.) Defendant stated that he could not leave Plaintiff alone, which Plaintiff interpreted to mean that he had to stay right there. (*Id.* ¶ 20.) Defendant disputes Plaintiff's interpretation. (Def.'s LR 56.1(a) ¶ 20.) None of the deputies ever handcuffed or physically touched Plaintiff. (*Id.* ¶ 28.)

While Plaintiff was alone with Deputy Hubbard, he asked to go back into the bathroom, and he was allowed to go into a different bathroom. (Def.'s LR 56.1(a)(3) ¶ 22.) Plaintiff did

3

not try to go back into his office when he was with Deputy Hubbard, but he was never told that he could not go back into his office. (*Id.* ¶¶ 23-24.) Plaintiff could have left the building when Defendant originally told him to leave the bathroom. (*Id.* ¶ 25.)

While the precise timing is unclear in the record, at some point Plaintiff went to his hearing office, followed by two deputies, and gathered his coat and briefcase. (*Id.* ¶ 21; Pl.'s LR 56.1(b)(3)(B) ¶ 17.) Plaintiff left the building at 4:30 p.m. (Def.'s LR 56.1(a)(3) ¶ 31.) Plaintiff wanted to wait to leave until after everyone in the office left at 4:30 p.m. due to his wet and soiled clothes. (Pl.'s LR 56.1(b)(3)(B) ¶ 12.) Plaintiff normally leaves work at 5:00 or 5:15 p.m., and there is no directive prohibiting employees from working after 5:00 p.m. (*Id.* ¶¶ 21-22.) Plaintiff was humiliated and embarrassed by the incident, and although he normally gets along with the deputies in his courthouse, he worries whether this incident could happen again. (*Id.* ¶¶ 25-26.)

## DISCUSSION

Defendant argues that summary judgment should be granted because Plaintiff was not seized; and if there was a seizure, it was reasonable. Defendant further contends that he is entitled to qualified immunity, and any claims based in Illinois state tort law are time-barred by the Tort Immunity Act.

### I. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). The Court must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001).

However, once the movant has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The party opposing summary judgment must offer admissible evidence in support of his version of events, and hearsay evidence does not create a genuine issue of material fact. *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir. 1996). "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. . . . The nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citations omitted). Furthermore, the Court is "'not required to draw every conceivable inference from the record,'" *McCoy v. Harrison,* 341 F.3d 600, 604 (7th Cir. 2003) (citation omitted), nor must it "scour the record in search of evidence to defeat a motion for summary judgment." *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 354 n.4 (7th Cir. 2002) (citation and internal quotation omitted).

## II.     Fourth Amendment Claim

In order to be liable under Section 1983, a defendant "must first possess power by virtue of state law, then misuse that power in a way that violates federal constitutional rights." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994) (alterations and citation omitted). Tarnoff claims that Boyd violated his Fourth Amendment rights by unlawfully holding him in custody. Boyd's motion for summary judgment argues that Tarnoff's rights were not violated because

5

Tarnoff was not seized, and even if he were, any seizure was reasonable under the circumstances. Boyd further contends that he did not violate a clearly established constitutional right, and therefore qualified immunity applies.

### A. *Seizure*

Defendant first argues that summary judgment should be granted because merely preventing Plaintiff from returning to the restroom did not constitute a seizure. *See id.* at 1177 (holding that even if an officer's conduct is "unreasonable, unjustified, or outrageous," it does not violate the Fourth Amendment if it does not involve a seizure). Plaintiff responds that he was not only seized, but given the length of his seizure, he was actually arrested.[1]

A "seizure," for purposes of Fourth Amendment analysis, generally occurs "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also Spiegel v. City of Chi.*, 106 F.3d 209, 211 (7th Cir. 1997) (holding that a person may be seized even if he is not touched if he "submits to an officer's order accompanied by a show of authority, thus restraining his liberty"). In this case, there is no dispute that Tarnoff was free to leave the area and to go anywhere else in the world other than the bathroom he had locked himself in. However, that fact does not, by itself, preclude a finding that he was seized. According to Tarnoff, he was seized because he was not free to stay. When a person does not wish to leave the

---

[1] Plaintiff also argues that the search and seizure invaded his constitutional expectation of privacy, citing *Soldal v. Cook County, Illinois*, 506 U.S. 56, 62 (1992), for the proposition that the Fourth Amendment protects property as well as privacy. It is unclear whether Plaintiff is arguing that he was unconstitutionally searched, but as Defendant points out, the complaint contains no claim of an illegal search, nor is there any evidence of an illegal search. Thus, to the extent that Plaintiff's response may attempt to craft an illegal search claim, summary judgment is granted.

scene of a police encounter, "the appropriate inquiry is whether a reasonable person would feel free to decline the officer's request or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 435-36 (1991). Factors that are relevant to this inquiry include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554 (citations omitted).

In addition to showing these objective factors, the citizen must also have "actually yield[ed] to a show of authority from the police or be physically touched by the police." *California v. Hodari D.*, 499 U.S. 621, 625-26 (1991); *see Kernats*, 35 F.3d at 1178 ("[N]ot only must the encounter meet an objective test of coercion but a subjective one of subjection.") (internal quotations and citation omitted). The "overarching themes" of seizure law are: "(1) the nature and degree of the official inducement, and (2) the extent of the restriction on the citizen's desired freedom of movement." *Kernats*, 35 F.3d at 1178. The first element reflects "the cost of ignoring the official's demands," and the second element "informs whether the citizen had reasonable options available to him." *Id.* at 1178, 1180 (stating that the crucial elements of a seizure are "coercive pressure from state actors resulting in a *significant*, present disruption of the targeted person's freedom of movement") (emphasis in original). Thus, the less a citizen's movement is constrained, the less that "even coercive police action will give rise to a seizure." *Id.* at 1180, 1181 n.7 (explaining that directing persons from an accident scene or ordering them to stay clear of a condemned building but allowing them to travel anywhere else "could in no way give rise to a seizure because of the innocuous character of the compelled disruption").

7

Defendant argues that because Tarnoff was not touched or threatened, and he was free to go anywhere he wished, other than the original bathroom, he was never seized as a matter of law. According to Tarnoff, the relevant factors urge a conclusion that he was seized. First, he states that he was objectively coerced, pointing to the threatening presence of three armed officers as well as Defendant's "clear and compelling" tone when instructing Plaintiff to leave the bathroom. Second, Tarnoff did in fact yield to Boyd's authority, exiting the bathroom at his command and not attempting to return. Plaintiff further maintains that because he was detained for approximately twenty-five minutes, which "is not a moment," the seizure was tantamount to an arrest for which Defendant lacked probable cause.

### B. *Reasonableness*

Defendant next argues that to the extent there may have been a seizure, it was reasonable in light of what he knew at the time of the encounter. Plaintiff responds that the seizure was not reasonable, and Defendant fails the test for an investigatory stop described in *Terry v. Ohio*, 392 U.S. 1 (1968), because the stop was not sufficiently limited in scope, nor was it executed through the least intrusive means available. Specifically, Tarnoff contends that Boyd was unreasonable in ordering Deputy Hubbard to accompany him, forbidding him from returning to the original bathroom, and exposing him to humiliation by making him leave the bathroom wearing soaking wet and feces-soiled clothes.

Preventing an individual from entering a location he wishes to enter does not violate the Fourth Amendment if it is reasonable under the totality of the circumstances. *Illinois v. McArthur*, 531 U.S. 326, 328-31 (2001) (finding it reasonable to prevent a suspect from entering his home unless accompanied by officers when the officers were awaiting a search warrant). In

8

evaluating the reasonableness of a seizure, courts are directed to balance "the extent of the intrusion against the need for it." *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985); *see also White v. City of Markham*, 310 F.3d 989, 995 (7th Cir. 2002) ("[W]here a traditional analysis of seizure 'yields no answer, the Court must evaluate the search or seizure under traditional reasonableness standards by balancing an individual's privacy interests against legitimate governmental interests.'") (quoting *Wyoming v. Houghton*, 526 U.S. 295, 299-300 (1999)).

Tarnoff's response enumerates the ways in which his privacy rights were violated, including exposing him naked from the waist down by opening the bathroom door, forcing him to put on wet and feces-soiled clothes, forcing him to go into a public area where he could be observed by other individuals in this embarrassing state, and by not being allowed to remain alone when Boyd entered the bathroom and assigned a deputy to remain with Plaintiff for at least twenty-five minutes. Defendant responds that he had a legitimate interest in Tarnoff's health and safety given what he knew, *e.g.,* that Tarnoff had locked himself in a bathroom for two and a half hours; his voice was trembling and slurred; he was sweating, trembling, and ashen-faced; and he appeared to be in pain. Moreover, Defendant did not restrain Tarnoff's movement significantly. Boyd merely ordered him to stay out of the bathroom and to remain in the company of a deputy, and even that limited restriction lasted less than half an hour. *See McArthur*, 531 U.S. at 332-33.

### C. *Qualified Immunity*

Finally, Defendant asserts that even if Plaintiff's constitutional rights were violated, he is qualifiedly immune from § 1983 liability: "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

9

known.' " *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) ("Qualified immunity balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.' " *Pearson*, 129 S. Ct. at 815. Courts therefore are directed to "'resolv[e] immunity questions at the earliest possible stage in litigation.' " *Id.*; *see Khorrami v. Rolince*, 539 F.3d 782, 787 (7th Cir.2008).

When a defendant raises qualified immunity, whose purpose "is to protect public officials from guessing about constitutional developments at their peril, the plaintiffs have the burden of showing that the constitutional right was clearly established." *Gonzalez v City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). A "clearly established" right is defined as one whose contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 604 (1999). A plaintiff may demonstrate that a right was clearly established "by showing that there is 'a clearly analogous case establishing a right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Gonzalez*, 578 F.3d at 540 (citations omitted). Plaintiffs, however, are not required to show that the very action in question has been previously held unlawful, "but in the light of pre-existing law its unlawfulness must be apparent." *Wilson*, 526 U.S. at 604. Where the facts in the case are unique, and a closely analogous case cannot be identified, "the relevant constitutional factors

must point strongly in the direction of constitutional transgressions before immunity is lost." *Kernats*, 35 F.3d at 1178.

The application of qualified immunity requires two inquiries: "(1) whether the facts, taken in the light most favorable to the plaintiffs, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Gonzalez*, 578 F.3d at 540 (*citing Pearson*, 129 S. Ct. at 815-16). Courts may decide the relevant questions in any order. *Pearson*, 129 S. Ct. at 819. In cases where "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," *id.* at 815-16; or when the parties' "briefing of constitutional questions is woefully inadequate," *id.* at 819-20; or where the constitutional question is so fact-specific that it may give little guidance in future cases, *Chaklos v. Stevens*, 560 F.3d 705, 711 (7th Cir. 2009), higher courts have advised that it may not be prudent to address the first question, whether a constitutional right exists.

Defendant argues that Plaintiff's right to return to the bathroom was not clearly established because there is no closely analogous case finding it unconstitutional for an officer not to allow a noticeably ill person from going back to a bathroom in which he had previously locked himself for two and a half hours. Plaintiff responds that the right to be free from an unreasonable seizure has been clearly established for decades, as has the constitutional right to be free from arrest without probable cause. Because there are genuine issues of material fact concerning whether Plaintiff was seized or arrested, is likewise inappropriate to grant Defendant qualified immunity. Plaintiff argues that allowing Defendant to be shielded from liability would

require this Court to give more credence to Defendant's version of events then Plaintiff's, which is inappropriate at the summary judgment stage.

The Court finds that this case is among those described in *Pearson*, where "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," 129 S. Ct. at 815-16, and thus the Court need not analyze the constitutionality of Boyd's encounter Tarnoff. Plaintiff has offered no analogous cases in support of his claim of a clearly established right.[2] Tarnoff's reliance on *Terry* and other cases generally describing the prohibition against unconstitutional seizures is unavailing, because those cases are not factually analogous and do not demonstrate that Boyd should have known the specific conduct at issue was unlawful. *See Spiegel*, 106 F.3d at 211 n. 2 (distinguishing cases including *Terry* which "involve individuals who were restricted by the police from going about their own business. In other words, they were not free to leave, whereas [the plaintiff] certainly was"); *Kernats*, 35 F.3d at 1181 (explaining that *Terry* "tells us very little about what constitutes a seizure in the first place" and that its language regarding seizure "is far too opaque to have established the unlawfulness of [the defendant's] actions").

The cases most factually similar to Plaintiff's have been dismissed on the grounds of qualified immunity. In *Kernats v. O'Sullivan*, the Seventh Circuit upheld the grant of qualified immunity in favor of an officer who, during an eviction, improperly ordered a family to leave their apartment or face arrest for criminal trespass. Despite characterizing the officer's actions as "arrogant and a bully-like abuse of power" and the order to leave as "a serious disruption of

---

[2] Plaintiff's failure to submit analogous cases "is not fatal by itself because we must determine qualified immunity in light of all relevant precedents – both those cited by the parties and those we discover ourselves." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994).

movement," the court found that the lack of cases on point compelled the conclusion that qualified immunity was appropriate. 35 F.3d at 1181.

Following his eviction, the plaintiff in *Spiegel v. City of Chicago* returned to his former apartment to retrieve his belongings, but he discovered that the locks had been changed. The police were eventually called, and the plaintiff to return to his residence under threat of immediate arrest if he refused the order. 106 F.3d at 210. The *Spiegel* court held that even if the plaintiff's Fourth Amendment rights were violated, his right not to be prevented from entering an apartment that was in the landlord's possession was not clearly established, and thus qualified immunity applied. *Id.* at 212. The court found that the officers' conduct was not contrary to precedent, "[n]or was it so shocking as to render precedent unnecessary." *Id.* (noting that the law was unsettled prior to *Kernats*, and *Kernats* did not resolve the issue either).

In the district court case *Day v. Office of Cook County Sheriff*, a *pro se* plaintiff was expelled from the courtroom after causing a disturbance and was also refused entry into the law library on another floor. No. 00 C 2529, 2001 WL 561362, at *1 (N.D. Ill. May 21, 2001). The court dismissed the claim on the grounds of qualified immunity, because "a reasonable sheriff's deputy would not have understood that his actions violated [the plaintiff's] constitutional rights. It is commonly accepted that police officers may order persons in public places to move without violating their rights." *Id.* at *3.

While Supreme Court precedent does not foreclose the possibility that a seizure may occur when a citizen is coerced to leave a place he would rather remain, "the lack of any case on point compels the conclusion that qualified immunity is appropriate (and dispositive) in this case." *Kernats*, 35 F.3d at 1181 n.7. This Court therefore expressly declines to resolve whether

13

Defendant's conduct did or did not violate the Constitution, because "all that matters is that the law did not clearly establish the unlawfulness of his actions." *See id.* at 1181. One could not expect a reasonable officer to be aware that (1) ordering an apparently ill man to leave a public restroom after two and a half hours; (2) refusing to allow the man (who apparently lacked equipment, materials, and training) to return to the bathroom to continue cleaning the feces from the room and his clothing; and (3) requiring him to remain in the company of a deputy while in the building, violated any constitutional rights. *See White*, 310 F.3d at 996-97 (stating that because the case law is so uncertain, "we could not expect an officer with even a detailed knowledge of the holdings in *Kernats* and *Spiegel*, much less a reasonable person, to have had a fair warning" that his conduct was unlawful).

### III. Illinois State Law Claims

Finally, Defendant's motion maintains that, while it is unclear whether Plaintiff alleges any state law claims,[3] any such claims are time-barred by the Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. § 10/8-101. Plaintiff's response does not describe any state law claims or otherwise dispute Defendant's claim of immunity. Therefore, summary judgment is granted as to any claims Plaintiff alleged or intended to allege under state law.

---

[3] Paragraph 1 of the First Amended Complaint states, in part, that the action is brought "pursuant to . . . the laws of the State of Illinois," but the body of the false arrest claim alleges only Fourth Amendment violations.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. No. 39] is granted.

SO ORDERED.                                          ENTERED:

DATE: **January 18, 2011**
_____                            _____
                                                     **HON. MARIA VALDEZ**
                                                     **United States Magistrate Judge**